UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 3-274 |
| TERRANCE BENJAMIN | SECTION "B"(2) |

## ORDER AND REASONS

Considering petitioner Terrence Benjamin's *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Rec. Doc. 1505) the Government's opposition (Rec. Doc. 1514), the record and applicable law, and for the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 1505) is **DENIED**; and

**IT IS FURTHER ORDERED** that petitioner's Motion to Appoint Counsel (Rec. Doc. 1507) is **DENIED** as unnecessary given clearly presented legal issues.

I.   PROCEDURAL AND FACTUAL BACKGROUND

Terrence Benjamin plead guilty to conspiracy to distribute and possess with intent to distribute cocaine, heroin, and marijuana in violation of 21 U.S.C. § 846 (Count 1); being a member of a RICO conspiracy in violation of 18 U.S.C. § 1959 and 1961 (Count 2); the murder of Jermon Rodriguez in furtherance of the RICO conspiracy in violation of 18 U.S.C. § 1959(A)(1) and (2) (Count 2C); the murder of Charles Howard in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(j) (Count 4); the murder of Ray Miner in furtherance of a drug trafficking crime in

1

violation of 18 U.S.C. § 924(j) (Count 20); and the attempted murder of Chester Smith in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 21). Rec Doc. 429.

Benjamin acknowledged membership in a criminal association that conspired to distribute and possess with the intent to distribute heroin, cocaine base ("crack"), cocaine hydrochloride, and marijuana for their collective financial benefit. *Id.* at 2. To achieve this, the conspirators obtained narcotics outside of the Eastern District of Louisiana to distribute throughout the B.W. Cooper Housing Development ("The Calliope Housing Development"). *Id.* at 1-2. Because the conspirators "utilized" this geographic area "almost exclusively", they sought to drive out competition from other drug dealers by possessing and utilizing firearms. *Id.* at 2. In addition, the conspirators would engage in other illegal activities in furtherance of the enterprise's goals, including murder, attempted murder, kidnapping, armed robbery, aggravated battery, illegal possession of a firearm, and aggravated assault with a dangerous weapon and kidnapping. *Id.*

On October 31, 1997, Benjamin, otherwise known as "T-Man", and co-defendant Adams Cobbins shot and murdered Jermon Rodriguez, whom Benjamin witnessed selling narcotics that Rodriguez purchased from a rival gang. *Id.* at 3. After the rival gang attempted to kill Benjamin and successfully killed his best friend, the petitioner was driven to kill Rodriguez "to reestablish [his]

2

reputation as a serious drug dealer in the subject area" in the aftermath of his friend's murder. *Id.*

On April 27, 2000, Benjamin and co-defendant Corey Washington murdered Charles Howard for a cash payment that was used to purchase quantities of heroin from co-conspirator Derrick Washington. *Id.* at 3-4. Benjamin and Washington used a .40 caliber semi-automatic pistol and a .45 caliber semi-automatic pistol to carry out the murder. *Id.* The heroin that was purchased was then sold to various buyers in and around the subject area. *Id.* at 4. The commission of Howard's murder bolstered Benjamin and Washington's status within the Housing Development because they demonstrated a "willing[ness] to employ violence to maintain and increase their position in the enterprise." *Id.*

On March 2, 2003, Benjamin shot Chester Smith and Ray Miner, who was killed by a bullet intended for Smith. *Id.* Benjamin first targeted Smith because the latter ran a competing narcotics business within the Housing Development. *Id.* At approximately 4:00 a.m., Smith heard a knock at the door and opened the door to a known individual. *Id.* at 5. After a few short moments, the known individual pulled out a .38 caliber handgun out of his pocket, and a struggle ensued over control of the weapon between Smith and the known individual. *Id.* Soon thereafter, Benjamin appeared in the hallway with a .223 caliber assault rifle and fired the weapon repeatedly at Smith and the other individuals present. *Id.* Smith

3

attempted to flee the apartment, but after exiting the apartment's back door, Benjamin reopened fire on Smith, who was hit in the upper arm. *Id.* Once police arrived to the scene, they found Ray Miner face down with a gunshot wound in his upper torso; Miner was pronounced dead upon arrival at Charity Hospital. *Id.* A known individual called the 911 operator and identified Benjamin as the shooter. *Id.* at 6.

In June 2008, Benjamin entered into an 11(c)(1)(C) plea agreement with the government, wherein the government agreed not to seek the death penalty in exchange for Benjamin's guilty pleas to Counts 1, 2, 2C, 4, 20, and 21. Rec. Doc. 1514 at 2. The government and Benjamin also agreed that imprisonment for a term of life was an appropriate sentence for Counts 1, 2C, 4, and 20 and a term of ten years for Counts 21, which were to run concurrently. *Id.* On June 27, 2008, Benjamin pleaded guilty to the aforementioned counts in accordance with the agreement. Rec. Doc. 1212.

On July 29, 2009, Benjamin filed his first motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel and that his guilty plea was not knowing and voluntary. Rec. Doc. 1370. That motion was denied with written reasons. Rec. Doc. 1460.

On November 25, 2019, Benjamin moved for a sentence reduction under the First Step Act of 2018, which he later moved to withdraw

4

on July 27, 2020. Rec. Doc. 1501; Rec. Doc. 1506. The original motion was dismissed without prejudice. Rec. Doc. 1508.

On July 6, 2020, Benjamin filed his second motion under 28 U.S.C. § 2255 that is presently before this Court and argues that the Supreme Court's holding in *United States v. Davis* renders his conviction and sentence unconstitutional. Rec. Doc. 1503; Rec. Doc. 1505. Specifically, according to *Davis*, Benjamin argues that he was convicted under §924(c)(1) based on unconstitutional predicate offenses. Rec. Doc. 1505. Finding that the defendant satisfied the required showing under *Reyes-Requena*, the Fifth Circuit authorized Benjamin to file a second and successive §2255 motion. Rec. Doc. 1502; *see Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001).

Petitioner argues the convictions involving a firearm must be vacated because the *Davis* Court held the residual clause of 18 U.S.C. §924(c)(3)(B) to be unconstitutionally vague. Rec. Doc. 1505 at 5. Specifically, per petitioner's motion, the Supreme Court's decision to not uphold a conspiracy charge as a predicate "crime of violence" requires the firearm counts in furtherance of a conspiracy to be vacated. *Id.* Moreover, Benjamin maintains that he did not raise this issue in a direct appeal because his sentencing occurred prior to the *Davis* decision; thus, the issue was not ripe for appeal. *Id.*

The government filed its response, arguing that *Davis* does not disturb petitioner's conviction – namely Counts 4, 20, and 21 – because they are valid predicates to his guilty plea to murder and attempted murder in furtherance of a drug trafficking conspiracy. Rec. Doc. 1514 at 5. The government further argues that petitioner is procedurally barred from asserting a *Davis* claim for failure to raise it on direct appeal, absent a showing of cause and actual prejudice. *Id.* at 10. Lastly, the government urges enforcing petitioner's waiver to contest his sentence in any post-conviction proceeding lodged in his plea agreement, given that the government forewent seeking the death penalty. *Id.* at 12.

Petitioner sought and was granted an extension of time upon which to file a reply to the government's response. Rec. Docs. 1515-16. Petitioner untimely filed a reply on November 7, 2020. *See* Rec. Docs. 1516, 1518.

Petitioner previously filed a motion to appoint counsel. Rec. Doc. 1507. Because he has shown a unique ability at the district and circuit court levels to present issues relative to Supreme Court precedent, appointed counsel is unnecessary.

**II.  LAW AND ANALYSIS**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence when (1) the sentence violated federal law or the United States Constitution, (2) the court lacked jurisdiction to impose the

6

sentence, (3) the sentence exceeded the maximum allowed by law, or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall. . .grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b). A petition containing "conclusory allegations, unsubstantiated by evidence, [will] not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). Instead, "[a] [petitioner] is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of his allegations.'" *Id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008).

After such a hearing, "[i]f the court finds that . . . there has been such a denial or infringement of constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and . . . grant a new trial . . . ." *Id.* Section 2255 motions represent a collateral attack on the federal sentence, and relief is reserved only for constitutional violations or errors that have caused "a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *see also Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990). Generally, failing to raise

7

a claim on direct appeal bars raising that claim on collateral review unless the petitioner can show cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 166-68 (1982). To note, Petitioner did not raise any of the claims currently before the Court on direct appeal. *See* Appellant's Brief & Reply Brief, *Minjarez*, 667 F. App'x 144.

    a. <u>Whether the *Davis* decision renders petitioner's convictions unconstitutional</u>

Petitioner relies on the *Davis* case, wherein the Supreme Court held that the residual clause contained in §924(c) is unconstitutionally vague. *United States v. Davis*, ---- U.S. ----, 139 S.Ct. 2319, 2324 (2019); *cf. Sessions v. Dimaya*, ---- U.S. ----, 138 S.Ct. 1204 (2018) (invaliding the residual clause of 18 U.S.C. § 16(b) as unconstitutionally vague); *see also Johnson v. United States*, 576 U.S. 591 (2015). 18 U.S.C. §924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to' or possessing a firearm 'in furtherance of' any federal 'crime of violence or drug trafficking crime'." *Id.* (quoting 18 U.S.C. §924(c)(1)(A)). Under section (3) of the statute, the definition of "crime of violence" is delineated into two parts – subsection (A) as the elements clause and subsection (B) as the residual clause. Accordingly, a "crime of violence" is defined as "an offense that is a felony and:

8

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing that offense.

18 U.S.C. §924(c)(3).

In *Davis*, the Supreme Court reviewed the Fifth Circuit's decision to vacate the respondent's convictions and sentences on a conspiracy count that served as a predicate crime of violence under the residential clause. *Davis*, 139 S.Ct at 2325. The Supreme Court upheld the Fifth Circuit's decision by finding that the statute requires a categorical approach rather than a case-specific approach because the latter "cannot be squared with the statute's text, context, and history." *Id.* at 2324. Thus, the Court rendered the Subsection (B) residual clause of the statute unconstitutionally vague. *Id.* at 2336.

Per the petition, Benjamin solely relies on *Davis* in arguing that the § 924 firearm offenses in furtherance of a drug trafficking conspiracy must be vacated. Rec. Doc. 1505 at 5. Further, because the *Davis* decision was not available at the time of his sentencing, he argues that the issue was not ripe for review. *Id.*

In response, the government argues that petitioner's legal argument is misplaced because his drug-trafficking offenses are still valid predicates. Rec. Doc. 1514 at 6. To support its

9

position, the government cites to the Fifth Circuit's decision in *Jones*, which relied on *Davis* to hold that a RICO conspiracy may not serve as a predicate crime of violence for a § 924(c) offense. *U.S. v. Jones*, 935 F.3d 266, 274 (5th Cir. 2019) (per curiam). In *Jones,* a jury convicted the defendants with several §924 offenses, and for each offense, the indictment charged a RICO conspiracy as a predicate crime of violence and a controlled-substance conspiracy as a predicate drug trafficking crime. *Id.* at 269. However, when preparing the verdict form, the jury was not required to specify which predicate offense(s) it relied upon to convict the defendants, including the RICO conspiracy charge that the *Davis* Court held was not a valid §924 predicate crime of violence. *Id.* Thus, the Fifth Circuit held that it was plain error that the defendants' convictions were based on an invalid predicate offense and vacated the convictions. *Id.* at 271.

The government suggests that a reasonable interpretation of *Jones* is that a RICO conspiracy can serve as a predicate drug trafficking offense under §924(c) without reference to a crime of violence. Rec. Doc. 1514 at 8. The relevant drug trafficking offenses to which the government refers are subsections (c)(1)(A) and (j). Section 924(c)(1)(A) criminalizes the use, carrying or possession of a firearm "during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment

10

if committed by the use of a deadly or dangerous weapon or device)." 18 U.S.C. §924(c)(1)(A). Subsection (j) further criminalizes the deadly use of a firearm while in the course of a crime of violence or drug trafficking offense. 18 U.S.C. §924(j).

Accordingly, the government alleges that both *Davis* and *Jones* do not affect the predicate offenses of Counts 4, 20 and 21 of Benjamin's superseding indictment because Counts 1, 2, and 2C contain sufficient allegations of his extensive drug trafficking activities. Rec. Doc. 1514 at 5, 8. Pursuant to the factual basis signed by petitioner, the government argued that Count 1, which only pertains to the admitted-to drug trafficking offense, was not a RICO charge and made no reference to a crime of violence. *Id.* at 8-9. As it pertains to Counts 2 and 2C, the government asserts that Benjamin pled guilty and explicitly admitted to using, carrying and possessing firearms in furtherance of the shared goal to distribute and possess with the intent to distribute narcotics for financial gain. *Id.* at 9.

The instant case is distinguishable from *Jones* because Benjamin admitted in both his plea agreement and factual basis to using guns in furtherance of the drug trafficking business and that the drug trafficking crime was a predicate for the Section 924 offenses. *Id.* Benjamin's "unequivocal admission" to the predicate drug trafficking offenses was not likewise found by the *Jones* jury. *Id.* The government's position is also supported by the

11

recent decision in *Ratcliff*, wherein the court held that *Davis* had no impact on the defendant's Section 924 conviction because the indictment and factual basis for his plea "set forth clearly" the predicate drug trafficking crimes. *United States v. Ratcliff*, No. 12-51, 2020 WL 3429893, at *2 (E.D.La. June 23, 2020) (Lemmon, J.). In so holding, the court stated, "*Davis* applies only when a defendant's 924(c) conviction is predicated on a crime of violence as defined by the residual clause. It has no application if the predicate crime was a crime of violence defined by the elements clause, or if the predicate crime was a drug-trafficking crime." *Id.*

Here, the factual basis signed by Benjamin confirms that his involvement in the criminal organization was mainly to further the drug trafficking business and not solely to but also to conduct violent acts. Specifically, petitioner admitted in the factual basis that he "knowingly and intentionally conspired. . .to distribute. . .more than 50 grams of cocaine base ('crack'), more than 1 kilogram of heroin, less than 500 grams of cocaine hydrochloride and less than 100 kilograms of marijuana." Rec. Doc. 1214 at 1. The government's only reference to the petitioner's gun use and violent acts was to show that they were done in furtherance of the narcotics operation and not to serve as predicate crimes of violence in violation of *Davis*. Because *Davis* does not apply to predicate drug trafficking crimes, the crimes Benjamin pled to in

12

furtherance of the narcotics business were valid predicates under Section 924.

### b. Whether Petitioner's *Davis* claim is procedurally barred

In addition to arguing that *Davis* is inapplicable to the instant case, the government asserts that Benjamin is procedurally barred from raising his claim for two reasons. First, Benjamin allegedly failed to raise his *Davis* claim on direct appeal and has not alleged any valid justification for his failure. *Id.* at 10. Second, by entering into a plea agreement, Benjamin allegedly waived his right to seek post-conviction relief, including a § 2255 habeas petition. *Id.* at 12.

#### i. *Failure to raise claim on direct appeal*

Because "a collateral challenge may not do service for an appeal," a defendant "may not raise an issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Frady*, 456 U.S. 152, 165 (1982); *U.S. v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994). The defendant must establish both cause and actual prejudice "even when he alleges a fundamental constitutional error." *Murray v. Carrier*, 477 U.S. 478, 493 (1986).

The cause showing requires the petitioner to demonstrate that "some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances." *U.S. v.*

13

*Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). The Fifth Circuit provided a list of objective factors, including "a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion." *Id.* Moreover, to show actual prejudice in the context of a guilty plea, the defendant must demonstrate that but for the error he would have forewent the guilty plea and proceeded to trial. *Id.* at 994.

Petitioner seeks to establish cause by the unavailability of *Davis* at the time of his conviction. However, Benjamin fails to show cause or actual prejudice based on the Supreme Court's holding in *Bousley*. In *Bousley*, the petitioner attempted to demonstrate cause through two explanations – novelty and futility. *Bousley v. U.S.*, 523 U.S. 614, 622 (1998). Although the Court previously found cause among certain "novel claims" that were not reasonably available to counsel at the time of the plea, it held that the petitioner's claim was not novel as there were several cases involving identical challenges. *Id.* Further, the Court found petitioner's futility argument unavailing because "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130, n. 35 (1982). Similar to the petitioner in *Bousley*, the futility of challenging § 924(c)(3)(B)'s constitutionality prior to *Davis* is unavailing. Rec. Doc. 1514 at 11.

14

Further, Benjamin has not shown that his claim was novel, considering that a vagueness challenge was readily available to him. Per the *Engle* decision, Benjamin had all of the "tools to construct" a constitutional vagueness challenge to § 924(c)(3)(B) before *Davis.*

In *Engle*, petitioners sought to establish cause, in part, by arguing they could not have known at the time of trial that the Due Process Clause addressed the burden of proving affirmative defenses. *Engle*, 456 U.S. at 130. The Court found this argument without merit because a case that was decided nearly five years before the petitioners' trials had already laid the basis for their constitutional claim; thus, "we cannot say [they] lacked the tools to construct their constitutional claim." *Id.* at 131-32. Accordingly, the Supreme Court reviewed *Engle* in *Smith v. Murray* and rejected the petitioner's novelty argument on the basis that the cases he relied upon were decided "well after the affirmance of his conviction and sentence on direct appeal." *Smith v. Murray*, 477 U.S. 527, 536 (1986). The Court explained, "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Id.* at 537.

*Davis* and its supporting authority were decided sometime after Benjamin's conviction on July 15, 2008. In finding the residual clause unconstitutional, the *Davis* Court followed the

15

court's prior holdings in both *Johnson* and *Dimaya* that found similarly worded statutes vague. *Davis*, 139 S.Ct. at 2325. The Supreme Court decided *Johnson* in 2015 and *Dimaya* in 2018 – about seven years following Benjamin's conviction. However, as *Smith* indicates, the pertinent inquiry is whether a vagueness challenge was available to Benjamin at all, which he certainly could have raised on direct appeal. Therefore, petitioner fails to meet his burden in establishing both cause and actual prejudice.

Nevertheless, courts have recognized an exception to the cause and actual prejudice standard. The narrow exception to this test is limited to "extraordinary cases involving [the] manifest miscarriage of justice that would result in the continued incarceration of one actually innocent of the offense." *U.S. v. Shaid*, 937 F.2f 228, 232 (5th Cir. 1991). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotes omitted).

Benjamin would not prevail upon a claim of actual innocence of the § 924 charges in light of his knowing and voluntary guilty plea. Benjamin acknowledged in the factual basis document that he, in fact, committed the offenses as described by the government. Because he fails to meet the cause and actual prejudice standard

16

and the actual innocence exception, petitioner is procedurally barred from raising his *Davis* claim.

### ii. *Waiver of Post-Conviction Relief*

A plea agreement containing a waiver of post-conviction relief is enforceable if (1) it was "knowing and voluntary" and (2) "applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). "A defendant knowingly and voluntarily enters a waiver when the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances – even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Potter*, No. 13-141, 2015 WL 3486446, at *1 (E.D.La. June 1, 2015) (Feldman, J.).

In *Burns*, the defendant argued that the post-conviction waiver was not applicable because the error he relied upon was not decided at the time of his plea. *U.S. v. Burns*, 433 F.3d 442, 446-47 (5th Cir. 2005). The Fifth Circuit held that an otherwise valid appeal waiver is not rendered invalid merely because the error was recognized after the waiver was made. *Id.* at 450-51.

The waiver contained in Benjamin's plea agreement states the following:

> The defendant hereby expressly waives the right to appeal his sentence on any ground, including but not limited to any right conferred by Title 18, United States Code, Section 3742 on the defendant, and the defendant further agrees not to contest his sentence in any post-

17

>  conviction proceeding, including but not limited to a proceeding under Title 28 United States Code, Section 2255.

Rec. Doc. 1215 at 3.

Although petitioner does not expressly dispute the validity of his post-conviction waiver, he generally asserts that he was precluded from raising the *Davis* issue on direct appeal because the error was not recognized until after he entered into a plea agreement. Rec. Doc. 1505 at 5.

Benjamin's post-conviction waiver bars his *Davis* claim. Enforcement of the waiver would not result in a miscarriage of justice because the government forewent the death penalty in exchange for Benjamin's knowing and voluntary guilty plea. Benjamin previously attempted to raise concerns regarding the knowing and voluntary nature of his plea agreement in his first § 2255 filing. We rejected this argument and noted in the order denying relief, "As part of the plea discussion, this Court explained the appeal and collateral challenge waiver of the plea agreement and the defendant responded affirmatively." Rec. Doc. 1460 at 2.

Upon applying the *Burns* reasoning to the instant petition, Benjamin is not entitled to post-conviction relief in the presence of an otherwise valid waiver. Benjamin does not allege any other deficiency in the plea agreement that would render the waiver unenforceable. Once again, we find that Benjamin knowingly and

18

voluntarily waived his right to post-conviction relief in his plea agreement. Because petitioner validly waived such a right, he is barred from raising the *Davis* claim.

    New Orleans, Louisiana this 23rd day of March, 2021

                                            SENIOR UNITED STATES DISTRICT JUDGE